We're going to move now to Appeal 25-1419, Vivek Bedi et al. v. Premium Healthcare Solutions, LLC. We're going to begin with oral argument now from Mr. Schwartz. Good morning. I represent the intervener and the appellant in this case, Vivek Bedi. This is a dispute between two judgment creditors. The intervener, Mr. Bedi, who obtained a judgment in state court in 2022, and the plaintiff in the federal case who obtained a judgment against the same defendant in 2024. Mr. Schwartz, I have a question for you. How could Rook Verfeldman apply when in 2022 your client obtained a judgment against a company that didn't exist called Premier Healthcare? Your Honor, he got the judgment against the correct defendant. The name of the defendant, it's a misnomer. It was called Premier and it should have been Premium. There is no Premier. I know there isn't. So how could Rook Verfeldman apply? I mean, it's a stretch. The Rook Verfeldman is a stretch anyway, but how could Rook Verfeldman apply in 2022? Are you suggesting that MedLegal should have been aware that your client sued the wrong defendant in 2022 and should have entered in the state court at that time to correct that error? Measure, how could Rook Verfeldman apply to those facts? Well, the misnomer, it's a misnomer. That clerical error could be corrected and it was corrected non-proton. But the plaintiff, MedLegal, did not – there's no claim that MedLegal relied on that judgment in any way or that they were prejudiced in any way by the fact that the debtor was spelled Premier instead of Premium. What would MedLegal have done differently had it been the proper – had it been the proper – I don't have any idea what they would have done differently, but I certainly don't expect that they would look – I mean, if you're doing public record searches, you don't look for the wrong name. Well, Mr. Betty was also – the principal was also a named defendant in that case, and if they had done that search, they would have done that. But what is – when you say they should have done a public record search – No, I'm not saying they should have done a public record search. I'm just saying how would they even know that Premium was being sued? You're saying, oh, it's a misnomer. It's not that big of a deal, but it is kind of a big deal. It's not the right defendant. I guess my response is how are they prejudiced by that? We're not claiming that they – we're not suing MedLegal because they didn't give notice. But I think on the Rooker-Feldman issue, you're saying that MedLegal is a state court loser. So MedLegal wasn't even a party to the state court litigation, but the state court litigation was against a different defendant. It was against a company called Premier that apparently doesn't exist, or maybe it does exist. I don't have any idea. But it wasn't against Premium. So how could they be a state court loser in litigation that was against the wrong defendant? That's where I'm having trouble – I'm having trouble understanding that part of your argument. Fair enough, and I'll address that. So the judgment was against Premium. It was a misnomer called Premier. MedLegal stands in the shoes of the judgment debtor. As a judgment creditor serving third-party citations, it stands in the shoes of the judgment debtor, which is Premium. It is Premium that that judgment in 2022 was entered into. It was – on the paper, it would be no different than if they had a judgment against me and they left out the Z or something, and then they went in with – I won't mention that because I just saw someone left out my Z or something. It doesn't affect your credit rating. So again, if there was a substantive – if there was another company out there and we sued the wrong company, or there was two companies with the same name and we sued the wrong company, that would be a different issue. But to say that someone loses all their rights because the name of the defendant is misspelled when everybody – well, the parties to the lawsuit certainly knew who was the intended defendant. Let me move you to appellate jurisdiction because the parties disagree with regard to that. One of the arguments is concerning the Declaratory Judgment Act. That act only applies to judgments that are issued in response to, quote, appropriate pleadings, end quote. There isn't a declaratory judgment action here filed under 2201. There was a motion for partial summary judgment. There was decreed a language that was seeking certain relief with regard to judgment as a matter of law as well as a declaration. I'm wondering if there's real difficulty here in us hearing this case as a result of the fact that a ruling was made by Judge Alonzo with regard to that motion, but the case continued. It wasn't as if a Rule 58 judgment came down. It wasn't as if the case ended in the district court. There are still proceedings that can be ongoing in the district court, and does that present a problem for our appellate jurisdiction? I don't believe it presents a problem because all the issues between Mr. Betty and MedLegal have been resolved. There's no pending claims or issues between those parties. The only issue was priority. What's the status of your adverse claim in the district court? It's moot because the intervener has a state court judgment. It can't go into federal court in a federal proceeding and enforce its judgment. The intervener has not filed any supplemental proceedings, citations, or garnishments in the federal court. Again, it has a state court judgment, and it's proceeding in state court with supplemental proceedings subject to waiting for this court and state court appeal. It is proceeding, so there's nothing going on between MedLegal and the intervener in this case. Is there anything left to be done in the district court with respect to your client? None. The plaintiff suggests that the intervener's claim has to be adjudicated whether he has a valid claim or not, but I don't know who would be litigating it. The plaintiff certainly doesn't have standing once it has priority. I don't think the plaintiff has suggested that the federal court has to litigate that because the only issue with respect to your client was the priority of the lien, and once the court made that determination as to your client, that's it is my understanding in federal court. That's why it's a final order. Why would your client then give up all those arguments on the merits? What would your client offer arguments on the merits if it was going to be bound in the way that you're talking about? Well, it only argued that the federal court did not have jurisdiction under the Rooker-Feldman doctrine to consider the plaintiff's arguments that what they claimed the state court judgment in 2022 was not a valid judgment against premium. But if we find appellate jurisdiction and we move through the Rooker-Feldman question and we get to the merits, we're still looking for Mr. Betty's arguments with regard to the priority, aren't we? Aren't those absent from the record? Well, I don't believe so. Within the record, it shows he got a judgment and a judgment lien in 2022. There's an order correcting the misnomer, and the law is clear, twofold. One, first in time has priority, and second, if it's non-propunct, which the misnomer was corrected, non-propunct, then it is retroactive. So your argument is that there's enough in the record? Yes, absolutely. I think the challenge is in responding to the motion for partial summary judgment, you relied on Rooker-Feldman, but you didn't make these lien arguments and priority arguments before the district court. That is correct. I think that's what Judge Brenner is getting at. If not, I will ask the question that why haven't you waived it? Because you didn't make those arguments about lien priority below. We're seeing those for the first time on appeal. Well, because if Rooker-Feldman applies, then the federal court would not be determining who has priority. So what if Rooker-Feldman doesn't apply and you didn't make those arguments below? Have you waived them? Your Honor, candidly, I would have to say I won't concede that it was waived. What we put forth, the evidence was sort of in the record. They did not argue that in response to the summary judgment. But certainly the evidence that would support these arguments, the date of the lien, the non-propunct, etc., that was all in the record. And I think it's just as a matter of law, no one disputes that the judgment lien first in time has priority. Are you litigating the adverse claim issue in state court? Because the district court didn't address that because it found that med legal had priority here. So it didn't have to address anything else. Are you litigating the adverse claim issue in state court? Yes and no. We are litigating in state court an adverse claim. But it's the adverse claim that med legal has intervened in the state court to assert their adverse interest to Mr. Petty's judgment. And that's on hold because there's an appeal in the state court case by med legal refusing to intervene to attack the non-propunct order. But they were still allowed to intervene to assert their rights as an adverse claim. Mr. Schwartz, would you like to reserve the remainder of your time? I would. Thank you very much. Ms. Skocelis, argument for the appellee. How did I do? Close. Okay. Christine Skocelis on behalf of appellee med legal. I want to start with appellate jurisdiction. And respectfully, Judge Sainov, I think there were other things to do that no one's talked about yet in the district court, which actually did happen. If you look at the life cycle of a citation proceeding, it starts as citation proceedings commence with the service of a citation to discover assets. And this court has recognized that the service of each citation starts its own discrete proceeding that's treated like a standalone lawsuit. If assets are discovered and there is a party who claims to have an interest in that asset, they can come forward and intervene and make an adverse claim. And that adverse claim will be tried and resolved in that specific citation proceeding as if it were in a garnishment proceeding. So are you saying that Mr. Betty's adverse claim will be litigated before Judge Galanso? Because that's not what I'm seeing in the record below given the priority, lien priority determination. Well, we haven't gotten to a really important step yet. And I think to your question, if you look at the converse, what if I lose my partial motion for summary judgment? Are we done? We are not. I'm going to go collect evidence, and I'm going to go insist on a trial of his adverse claim. And it will be his burden, but he'll need to show that he does have a valid claim. But you don't need to do that since you won. Right, right. That's true, but there still was something to be left, which I don't know that anybody has really addressed well. After the lien priority ruling, I filed motions for turnover orders, for example, for BMO Bank to turn over the substantial sum of money that they had in their frozen accounts that belonged to premium. And the judge granted those, relying on his interlocutory order of MedLabel having lien priority. Now, the Illinois Supreme Court will say this, and this court has also said this. Turnover orders are final and appealable because they resolve all of the issues related to that specific asset that was at issue in that specific citation proceeding. And appellant could have appealed the turnover order. Let's say an example, the BMO Bank turnover order. He could say— Are these turnover orders that are in Mr. Betty's name, for accounts in Mr. Betty's name? Premium. So again, how would that impact the citation—the intervener's motion filed here? If you were here and premium was appearing, I think you'd have a stronger argument. But the issue as to Mr. Betty looked like it was a very discrete, separate citation to discover. And as you said, we have said citations to discover assets are their own unique individual cases. So the adverse claim is part of a citation proceeding. It is not its own proceeding. You have to bring it if there's already a citation proceeding such as the BMO Bank proceeding. So let's assume you were affirmed here. We take the case. We find we have jurisdiction. We affirm. What's left to do before Judge Alonzo as to Mr. Betty? Ask for the turnover orders that says BMO Bank, you give premium assets to MedLegal and not to Mr. Betty, who claims to have an interest but I've decided that they don't have a lien priority. And if Mr. Betty is unhappy with that, he says, no, I'm going to appeal the turnover order. I want you to put on a stay. I don't want BMO Bank to turn anything over to MedLegal until my appeal is resolved. And if he had appealed the final and appealable turnover orders, that interlocutory priority ruling would have been merged into that. Do the rules provide for or allow for such interlocutory up and downs between a priority ruling and a citation order ruling? That seems to be awfully inefficient and not what the rules of the statutes provide for. It goes to your argument on pages three to nine of your brief that there is no appellate jurisdiction. I think if you look at it, like I said, in the converse, if MedLegal had lost on the priority issue, there would have been more to do. And ultimately, after does he have a valid claim, does not have a valid claim, someone is going to go ask for a turnover order. And that's the order that is final and appealable. There's no question about that in state court and here. And if you think about interlocutory orders getting merged in under Appellate Rule 3C7, you can see the interlocutory nature. Because if he's found to not have a valid claim later, if that's how things go, then that interlocutory ruling really doesn't matter. Also, if that interlocutory ruling is found in MedLegal's favor and it turns out there aren't any assets that get uncovered, I'm never going to file a turnover order. Is that a final and appealable order, the lien priority ruling, that he can go appeal now? It's Moot 2. So which is it? Are you arguing the counterfactual that there is jurisdiction and that would be the result, or are you still standing in the position that there is no appellate jurisdiction? There's no appellate jurisdiction. That lien priority order, although it was necessarily incorporated into those final and appealable turnover orders, isn't itself final and appealable. Because that didn't resolve all issues related to the specific asset that was at issue in the specific stand-alone citation proceeding. Let me ask you about Docket Entries 72, 73, and 74 in the District Court, the motion for Partial Summary Judgment. It is captioned Partial Summary Judgment. Correct. However, the Decree to Language says, asking for judgment as a matter of law, and it does use the verb declare. Does that run into a problem with, I'm thinking, the Wachovia case and some of our other cases on declaratory judgment? No, I don't think it does. This court has counseled that not every declaration of some rights makes an order immediately appealable. You can't just slap a declaratory label on it and manufacture a finality. The court still has to do the Section 1291 analysis to see if the order is final and appealable. Under the Wachovia line of cases, it was unmistakable that the court meant to rule on and dispose of in full a declaratory judgment claim. That is not what happened here. Thank you. If I could just turn briefly to the Ruger-Feldman argument. I think Judge Kirsch, you hit the nail on the head. What would legal have done differently? How would we prejudice by that non-protonc order? Well, I'll tell you. Before we pursued collections, I looked on PACER and the federal dockets. I looked through Cook County's records, and I scoured DuPage County's records for a judgment against premium, because that's my judgment debtor. Apparently, there was a judgment against premier there. I wasn't looking for premier. Of course I wasn't. Had I found—had they done things right before the DuPage County court, and I saw that there is a preexisting judgment against premium, my client and I might not have pursued collections. I don't know what we would have done, but it certainly would have changed our analysis of whether to pursue collections. In your motion for partial summary judgment, though, don't you concede that the state court judgment prejudiced your rights? No, I don't. I know appellant says MedLegal conceded that, but we did not. It's not the judgment itself. The fact that he, appellant, won a case against premium or premier, it's that MedLegal lost its place in the priority line. That's really what prejudice does. If the nonpartum order has the legal effect that appellant would like it to, his lien would be superior to MedLegal's lien. That's the prejudice. MedLegal doesn't get to collect on his judgment immediately. There's time value of money. There may not be any money left in the bucket. That's the prejudice, and that nonpartum order is not correcting a clerical error. I know he calls it the misnomer order, but it affected a substantive change by extending liability to premium who had never been liable to appellant before. And that's a substantive change that affected a third party's rights that already existed at the time that nonpartum order was entered. That is not what nonpartum orders are meant to do, and Judge Alonzo correctly found that the nonpartum order did not have that legal effect. What's the status of the citations to discover assets below now? Currently, there are none pending. I don't think the court would have jurisdiction to enter term report orders right now anyway. I think Judge Alonzo found that. Did Judge Alonzo find that when there was a motion to clarify something? Oh, yes, one of the attorneys who also got a citation after my citation asked for clarity. There's a federal order on this end, and there's a state citation that says I can't do anything with money. Please help. And he said, well, let's see what the appeal happens. There is citation proceedings pursuant to Mr. Betty's citations that he served later in DuPage County. But not on this case. No, not in this case. They're on a state court. Yes, exactly. Do you have any turnover orders pending, motions for turnover? I don't, but I have since learned that there are other respondents that do have money. And if the appeal is dismissed for want of appellate jurisdiction or Judge Alonzo's order is affirmed, we will move for turnover orders on that. All right. If there isn't anything further, we just ask the court to dismiss the appeal for lack of appellate jurisdiction, or if there is jurisdiction, to affirm the district court. Thank you. Thank you, Ms. Coachellis. Mr. Schwartz, we'll move back to you now for rebuttal argument. Thank you. On the issue of jurisdiction, I'd like to reiterate there's nothing. Mr. Betty is not pursuing any supplemental proceedings, nor do I think he can pursue supplemental proceedings in federal court on a state court judgment. So the only relief Mr. Betty could have is that he would have priority over these assets. And the district court judge ruled on that, and there's nothing left for the district judge to do with respect to Betty's claims. All the other citations, as counsel says, those are separate proceedings. That doesn't affect this court's jurisdiction. The other point I want to point out is for purpose of non-pro-tonk, the DuPage County Court entered, changed the misnomer non-pro-tonk, which means that the judgment entered against Premier was actually intended to be against Premium. The district court judge, I say in violation of the Rooker-Feldman Doctrine, disagreed with the state court judge and said something that the non-pro-tonk either is not effective or doesn't apply. That's the only way he could have made that ruling on priority. I will point out that in the Seventh Circuit, this court, in the King case, 825 F. 2nd, 1180, it's cited in the appellee's brief. The court acknowledged that if an order is entered non-pro-tonk, that was a dispute among priority creditors, and there was a citation proceeding that lapsed, and then it was reinstated, and the issue was whether that was non-pro-tonk so that the lien remained in place for the citation, or it was a new citation. The lower court didn't rule whether it was non-pro-tonk, and the Seventh Circuit said if it was non-pro-tonk, then that creditor would have priority, but since it wasn't non-pro-tonk, the creditor doesn't have priority. In this case, the correction of the misnomer was non-pro-tonk, and therefore the date of the judgment is the judgment that was entered in October 2022, and I cite some state court cases that say correcting an order non-pro-tonk does not affect the finality of the original order. Again, it's merely a clerical change to the name of the defendant. Thank you, Mr. Schwartz. Thank you very much. Thank you, Ms. Cochellos. The case will be taken under revisal.